[No. 6684.   Decided June 29, 1907.]

THE STATE OF WASHINGTON, *on the Relation of* HENRY HARRIS *et al., Plaintiff*, v. OLYMPIA LIGHT AND POWER COMPANY *et al., Respondents.*[1]

EMINENT DOMAIN—POWER PURPOSES—FLOODING LAND.   Condemnation for the purpose of developing power for street car and electric light purposes is authorized where it is sought to raise the waters in a lake to be used as a reservoir during the summer months when the supply was inadequate, and the land sought to be condemned would be covered by such raising of the waters of the lake.

SAME—TEMPORARY PURPOSES.  Condemnation of land to develop power for street car and electric lighting purposes cannot be objected to as being for a merely temporary purpose, from the fact that in six years more power would probably be required, where no intention is shown to abandon the same at such time.

SAME—PARTIES ENTITLED—POWERS OF CORPORATION—PUBLIC AND PRIVATE USES.  Condemnation of land to develop power for street car and electric lighting purposes cannot be objected to on the ground that the company's articles of incorporation authorizes it to sell electric light to the public, which was not a public use, thereby easily evading detection in wrongfully using the power for private purposes, where the petition and testimony show that the lands sought to be condemned are necessary for a public use, and especially where the evidence shows that the amount used for private purposes could be readily ascertained.

SAME—DAMAGE TO OTHER LANDS—DIVERSION OF WATER.  A condemnation of land for the purpose of developing a water power is not objectionable on the ground that it will damage other lands by· diverting water therefrom, where it is only proposed to divert water during the freshets and high water.

Certiorari to review an order of the superior court for Thurston county, Linn, J., entered February 18, 1907, in favor of the petitioner, adjudging a public use and directing the assessment of damages by a jury in a condemnation proceeding.   Affirmed.

*James M. Ashton* and *Vance & Mitchell,* for relators.

*T. N. Allen* and *Troy & Falknor,* for respondents.

[1]Reported in 90 Pac. 656.

MOUNT, J.—This is the second review of this case. When it was here before we held that the respondent Olympia Light and Power Company was not authorized to exercise the power of eminent domain to secure electric power for sale to the public. The cause was therefore remanded to the lower court, with leave to amend the petition so as to ask only for the condemnation of land sufficient for the purpose of furnishing electric power to operate respondent's street railway and lighting system. *State ex rel. Harris v. Superior Court,* 42 Wash. 660, 85 Pac. 666. The petition in condemnation was accordingly amended and, upon a hearing, the trial court found, and entered an order adjudging the use sought to be a public use, and that certain of relators' lands are necessary to be taken for such use. This review is prosecuted from that order.

The respondent Olympia Light and Power Company is a domestic corporation, operating an electric street railway between the city of Olympia and the town of Tumwater and through the streets thereof, and also an electric light system in said city and town. Its electric generating plant is located at the mouth of the Des Chutes river, in the town of Tumwater. This plant is operated by means of water taken from said river. During the months of July, August, and September of each year, there is not sufficient water in the river to effectively operate the railway and electric lights, but during the rest of the year there is an ample supply of water for that purpose, and during the months from November to May of each year, when freshets and high water frequently occur, much water runs to waste. In order to conserve this waste water, respondent corporation proposes to divert the river into Lake Lawrence, a fresh-water lake, some twenty-six miles up the river from Tumwater, and proposes to raise the surface of this lake some thirty feet above its natural surface. It is proposed to divert the water from the river by a canal, the bottom of which is to be two feet above low water in the river, and by means of this canal to carry a portion of the water from the river during high water and freshets into the lake,

and there hold the said water until the dry season, when the water in the lake will be gradually let out so as to supply a continuous flow in the river, sufficient to generate about five hundred additional horse power at the power plant at Tumwater.   In order to do this, it becomes necessary to overflow a portion of relators' real estate, by the rise of the water in Lake Lawrence.

At the trial it was conclusively shown that the water in the Des Chutes river was not sufficient during the dry season in July, August, and September, to furnish power to effectively operate the railway and light plant of respondent corporation, and that frequently on that account the railway service was suspended for short intervals in those months.   This, of course, showed the necessity for more power during such times. In the case of *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & Power Co.*, 42 Wash. 632, 85 Pac. 344, this court held that a street railway company might condemn lands not adjacent to its right of way, for the purpose of developing a water power to create power for its system.   It is conclusively shown that the rise of the water in the lake will cover the lands sought,. and since it is conceded—or, at least, was decided in this case when it was here before—that the street railway and electric lighting systems are for a public use, it follows that the respondent was authorized to condemn the land sought.

The relators contend, however, that the appropriation here sought is for a temporary purpose.   This contention is based upon evidence to the effect that the additional power which will be created by the proposed improvement will be sufficient to supply the demand for the next six years only, and thereafter additional power will be required, provided the growth of Olympia and Tumwater continues in the future as is calculated by the manager of the respondent corporation.   This contention seems to us to be without merit.   There is no evidence in the record that the power sought is for a temporary

purpose. No intention is disclosed to abandon the water power or to substitute some other form of power. On the other hand, the respondent's manager testified that he had made inquiries as to the cost of substituting steam power for water, but that the cost of such change is prohibitory. Furthermore, there was no evidence to show that the water power now used could not be increased indefinitely by means similar to those now proposed, and sufficient water power thus acquired to meet all increased demands. Conceding, however, that the proposed improvement will not be sufficient to meet the demands after six years' time, that fact of itself is not sufficient to show a temporary use, because other power may then be used to supplement rather than displace the power in use. It is, therefore, unnecessary to discuss or pass upon the question whether lands may be condemned for a temporary use.

Relators also contend that the right of eminent domain should not be permitted in this case, because respondent's articles authorize the furnishing of power to individuals, which is not a public use; and because it is within the reach of respondent corporation to successfully evade detection in case such power shall be furnished to individuals after condemnation of relators' land for a public use. This question was before us in the case of *State ex. rel. Harlan v. Centralia-Chehalis Elec. R. & Power Co.*, at page 640, *supra*, where we said:

"When a corporation, whose articles disclose purposes some of which are public and some of which are not, seeks to exercise the right of eminent domain, we may look to its application and the evidence introduced at the hearing to determine what its real purposes are. Measured by these tests, there can be no question as to the purposes of the respondent corporation; for both its application and the testimony show that it desires this power that it may further its business as a common carrier. But while the exercise of this right of eminent domain must be guarded jealously, so that the private property of one person may not be taken for the private use of another, after all is said and done, the power to prevent property taken for a public use from being subsequently diverted to a

private use, must rest rather in the supervisory control of the state than in caution in permitting the exercise of the power. Property taken for a public use by a corporation organized solely to promote a public business may be as easily diverted by it to a private use as it may by one having both public and private objects. It is not the object for which a corporation is formed that prevents it from wrongdoing. The preventive rests in the power of the state to compel it to lawfully exercise its granted privileges."

This language is especially applicable to this case and determinative of it upon this point, because both the petition to condemn and the testimony in support thereof show that the lands sought to be condemned are necessary for a public use, and that respondent corporation intends to so use it. Furthermore, the evidence fairly shows that the amount of electricity furnished for power purposes for private use may be readily determined at any time, so that the public and private uses may be readily separated.

Relators next contend that respondent corporation, if permitted to condemn in this action, will damage relators' land in a manner not mentioned in the petition. The evidence shows, that the Des Chutes river flows through relators' land at a place not desired to be taken; that such land lies between the proposed intake and outlet of Lake Lawrence, and that the water taken from the river by respondent corporation will not be permitted to flow across relators' land as it is accustomed to flow by nature. Relators argue from these facts that damages will accrue on account thereof. If this question is proper to be considered at this time, there is certainly nothing in the evidence to justify a refusal to permit the power of eminent domain for that reason. It is true the evidence shows that the river is suitable for floating logs and shinglebolts, but it is not shown that relators have ever used, or intend to use, the river for that purpose. Respondent does not propose to interfere with or divert water from the stream at low water. The bottom of the intake is to be two feet above low water in the river, so that the flow of water in the

river will be lessened only when the water is at least two feet above low water and during freshets and high water. It is difficult therefore to imagine how the rights of the relators to the ordinary flow of water in the river will be injuriously affected. If the injury arising from the diversion of a portion of the stream is remote and inconsequential, relators would not even be entitled to damages. There is nothing in the record now to even show any damages.

The other questions presented have been fully determined against relators' contention, and need not be further considered.

The order of the trial court is therefore affirmed.

HADLEY, C. J., ROOT, FULLERTON, CROW, DUNBAR, and RUDKIN, JJ., concur.