HOLCOMB, J., dissents.
This action was instituted as a condemnation proceeding, upon the petition of the Puget Sound Power Light Company, a corporation. The purposes for which the corporation is organized are extensive and are both public and private. For a number of years it has been, and is still, engaged in carrying out those purposes. When this proceeding was commenced, the corporation was engaged in constructing a hydro-electric plant on Baker river to produce additional electric power, estimated at 18,000 *Page 309 
K.W. In order to transmit this power it is necessary to construct and use a transmission line or lines across the lands of Floyd Sill and others, described in the petition. Being unable to agree with the landowners on the price to be paid for an easement for such transmission line, the corporation seeks to acquire it by condemnation. On hearing the application for an order adjudicating that the use for which the plaintiff sought to acquire such easement was a public use and that there was public necessity therefor, the superior court made the following findings of fact, conclusions of law and order, viz.:
"This cause came on regularly for hearing on the 15th day of September, 1924, upon the application of the petitioner for an order of adjudication of public use and necessity, the petitioner and the respondents appearing by their respective attorneys of record. Evidence was adduced and certain admissions were made and stipulations entered into upon the trial, from which the court finds and determines — that the petitioner is a corporation authorized to do business in the state of Washington, and has paid its annual license fee last due to said state, and is empowered by its articles of incorporation to engage in and is actually engaged in, among other things, the business of generating and distributing electric power and energy in and throughout Snohomish, Whatcom, Skagit, King, and Pierce counties and elsewhere throughout the state of Washington, for the operation of interurban railways and to furnish light for public buildings and places and to many persons for use in their homes, and is also engaged in supplying such power to persons who use it for manufacturing purposes, and that all of the original capital stock of the petitioner has been subscribed and paid; that petitioner now has available for all purposes about 143,000 K.W.; that it is now engaged in the construction of a water-power generating plant on the Baker river wherein it proposes to produce electric current to be used for public purposes to the extent that there shall be demand for such use; *Page 310 
that it sells, and proposes to sell, current for manufacturing purposes to other concerns and for other private uses; that it operates interurban lines, furnishes light for public buildings and places and to many persons for use in their homes; that it seeks the rights here sought to be appropriated by it in order that it may transmit over the lines to be built by it and thus render available for distribution and use the electric current to be by it generated at said Baker river plant; that at the peak hour, or time of highest demand for public uses upon its now available current, it has current actually devoted to private uses to the extent of from 25% to 30% of its total supply; that at the hour of minimum demand for its public uses, it now has available for private uses 50% to 60% of its total current; that it actually has at the present time a surplus over all demand, both for public and private uses, of approximately 23,000 K.W.; that the transmission lines for which the easement is sought to be condemned herein would be used to transmit power for use in operating street railways, interurban lines, street lighting, and lighting in homes under franchise of petitioner and also for operating manufacturing plants, but such transmission lines would not be constructed in any other manner for the transmission of all of such power than they would be constructed if wholly devoted to transmitting power used wholly for public uses; that if the rights sought to be condemned are for a public use within the meaning of the constitution and the law, necessity exists for the acquisition of such rights.
"In view of the foregoing, the court concludes that the contemplated use of the rights sought to be condemned herein is not a public use, and for that reason
"It Is Ordered, Adjudged and Decreed that the petitioner's said application be and the same is denied, to which order the petitioner excepts and its exception is allowed."
The petitioner made no request for any finding that was refused, nor was any exception taken to any finding that was made. The petitioner filed written exceptions to the conclusion of law entered in the case, and *Page 311 
by writ of review has brought the case here for our determination.
It may be well to state that we do not understand by the allegations of the petition or the findings of fact, or both, that the plaintiff has heretofore availed itself of, or is now proceeding under, the provisions of the act of March 13, 1907, Laws of 1907, p. 349; Rem. Comp. Stat., § 5432 [P.C. § 7617], relating to corporations organized for the purpose of generating and transmitting electrical power for the operation of railroads and railways or for municipal lighting, of which, in the case ofState ex rel. Dominick v. Superior Court, 52 Wn. 196,100 P. 317, 21 L.R.A. (N.S.) 448, we said:
"It is questionable whether the legislature intended by this act to merely enlarge or extend the uses that might be made of electricity generated for public purposes and not needed therefor, or whether it intended to enlarge the power of eminent domain itself. If the former was intended, the act would seem to be entirely free from constitutional objection, while in the latter case the validity of the act would be very questionable, under previous rulings of this court."
In eminent domain proceedings on the petition of a corporation such as this one, § 925, Rem. Comp. Stat. [P.C. § 7650], requires that three things be satisfactorily proven to the trial court, in the following order, viz: (1) that the contemplated use for which the property sought to be appropriated is really a public use; (2) that the public interest requires the prosecution of such enterprise; and (3) that the property sought to be appropriated is required and necessary for the purposes of such enterprise. The part of § 16, art. 1, of the state constitution that covers this subject deals only with the first of those three things. It says:
"Whenever an attempt is made to take private property for a use alleged to be public, the question whether *Page 312 
the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public."
Thus, by both the constitution and the statute, the primary question is that of public use. In this case the trial judge did not find that there was a necessity for the taking of the property, but the finding was "that if the rights sought to be condemned are for a public use within the meaning of the constitution and the law," that then there was necessity for acquiring the property. The language used is somewhat faulty, but evidently it was intended to mean that, if the contemplated use of the property sought to be taken was really a public use, that then necessity existed for the acquisition of it, because, immediately following that statement in the findings, the court makes its only conclusion "that the contemplated use of the rights sought to be condemned herein is not a public use."
Under the constitution and the statute, private property may not be taken for uses that are both public and private; nor for a private use, "except for private ways of necessity and for drains, flumes, or ditches on or across the lands of others for agricultural, domestic, or sanitary purposes;" nor for purposes that are private, or both public and private, with the proviso that if later on it be found necessary to do so, that then it shall be devoted to a public use; but, on the contrary, it is plainly the intent, according to the terms of the law and the sovereign nature of the right, that, at the time of taking the property, the contemplated use to which it is to be devoted shall "be really public," and in the determination of that question "courts look to the substance rather than the form, to the end rather than to the means."
Certain of our cases are quoted and relied on by the plaintiff. Among them are State ex rel. Harlan v.Centralia-Chehalis *Page 313 Elec. R. P. Co., 42 Wn. 632, 85 P. 344, 7 L.R.A. (N.S.) 198, and State ex rel. Harris v. Superior Court, 42 Wn. 660,85 P. 666, 7 Ann. Cas. 748, 5 L.R.A. (N.S.) 672. In the latter case, as stated by counsel, it was said:
"We held in the State ex rel. Harlan v. Centralia-ChehalisElec. R. etc. Co., ante p. 632, 85 P. 344, that the operation of an electric car was a public use, and the right of condemnation existed for the purpose of obtaining power necessary for the prosecution of such business. It is, also, we think, without question now admitted that the furnishing of electric lights to a municipality is a public use which warrants condemnation of private property."
Also the case of State ex rel. Harris v. Olympia L. P.Co., 46 Wn. 511, 90 P. 656, wherein we said, "It is conclusively shown that the rise of the water in the lake will cover the lands sought, and since it is conceded — or, at least, was decided in this case when it was here before — that the street railway and electric lighting systems are for a public use, it follows that the respondent was authorized to condemn the land sought." Also the case of Tacoma v. Nisqually Power Co.,57 Wn. 420, 107 P. 199, cited only by the plaintiff, was one wherein it was held, upon eliminating by the process of construction the word "private" from the act, that every mentioned and described purpose in the act is an undoubted public use and that "there is no commingling of public and private purposes, nor authority given under the act to use any of the facilities therein referred to for other than a distinctively municipal use." True, in the opinion in that case it was said that if, at a time when the peak load was not required for public use, it permitted for other use what the evidence showed to be insignificant and purely incidental that it would not defeat the right to condemn for public use, nevertheless, it was observed *Page 314 
by the court, "In the case before us now, it is apparent from the evidence, which must be the controlling feature, that the city's need of the power it seeks is a strictly municipal and public use, and that it is not seeking, in its requirement of 20,000 horse power, more than will in the near future be required for a purely public use." Also the case of State ex rel. Lyle Light,Power Water Co. v. Superior Court, 70 Wn. 486, 127 P. 104, cited by counsel, was one wherein the court said, "The petition avers, and the testimony shows, that the uses sought to be served by respondent and for which the property is sought to be taken are public." And another case cited, State ex rel. WeyerhaeuserTimber Co. v. Superior Court, 71 Wn. 84, 127 P. 591, was one wherein, although the objects of the condemning company as expressed in its articles were for both public and private use, it was said, "The evidence, however, shows that the only present market for electric current and the only present purpose of the respondent is to furnish electric light to the town and inhabitants of Sultan."
To the extent that these cases declare what are public uses and that condemnation will be allowed where the property sought will be used only for public purposes, although the powers possessed by the condemning company may be both public and private, there can be no question. Nor is there any doubt in the present case that the property sought, if permitted to be acquired, would be devoted more largely to public uses, although manifestly, to a very great and important extent it would be devoted continuously to private uses. There is neither allegation nor finding in this case that there is at this time, or according to any anticipated need for the near future, any necessity for the taking of this property for public use. On the contrary, it appears clearly that if there is any necessity whatever for *Page 315 
acquiring the property it is for the prosecution of uses that are both public and private and which are combined in such manner that they may not be separated.
In State ex rel. Harris v. Superior Court, 42 Wn. 660,85 P. 666, it was held that a company operating a street railway system and public lighting plant was not entitled to exercise the right of eminent domain to secure electric power to sell to the public generally and without discrimination, in addition to the amount required for its light and street railway system. In that case, upon permission granted, the power company amended its petition and, upon a second trial, both the trial court and this court allowed condemnation. State ex rel. Harris v. Olympia L. P. Co., 46 Wn. 511, 90 P. 656. This court, in the latter case, held "that both the petition to condemn and the testimony in support thereof showed that the lands sought to be condemned are necessary for public use and that the respondent corporation intended to so use it," following the rule of State ex rel.Harlan v. Centralia-Chehalis Elec. R. P. Co., supra.
This court, like many others, has often said that if a private use is combined with a public one in such a way that the two cannot be separated, then, unquestionably, the right of eminent domain could not be invoked to aid the enterprise, "and this being true, we think it must be true, also, that when a corporation, whose articles disclose purposes some of which are public and some of which are not, seeks to exercise the right of eminent domain, we may look to its application and the evidence introduced at the hearing to determine what its real purposes are." State ex rel. Harlan v. Centralia-Chehalis Elec. R. P.Co., supra.
In this case the findings show that the relator is not only empowered but is actually engaged in both public and private enterprises; that without the Baker river *Page 316 
project it now has available 143,000 K.W.; that at the peak hour, or time of highest demand for public uses upon its present available current, it has current actually devoted to private uses to the extent of twenty-five to thirty per cent of its supply; that at the hour of minimum demand for public use it now has available for private uses fifty to sixty per cent of its total current; and that it has at the present time a surplus over all demand, both for public and private uses, of approximately 23,000 K.W. That is, while serving the public at the peak hour, it has, not simply available but actually devoted to private uses, twenty-five to thirty per cent of its present supply of power, and while it has a greater amount of power for private use when not using the maximum for public purposes, still the unquestioned finding is that it actually has at the present time a surplus over all demands, both for public and private use, of approximately 23,000 K.W.
As we view it, this is not a case of providing for a public use and, when the maximum for that purpose is not required, devoting it, or a part of it, to some other purpose so as to prevent waste, but a case of actually devoting one-fourth of the total available supply to private use at the same time of the highest demand for public service and still have over and above the two combined a supply of approximately one-sixth of the total present available supply. Under such circumstances we know of no sound reason for holding, nor any case judicially declaring, the contemplated use of additional property to be really public, hence there is no necessity shown for the taking of the property sought to be acquired.
Plaintiff lays considerable stress on the following words in the findings: "But such transmission lines would not be constructed in any other manner for the transmission of all of such power than they would be *Page 317 
constructed if wholly devoted to transmitting power used wholly for public uses." These words immediately follow the statement "that the transmission lines for which the easement is sought to be condemned herein would be used to transmit power for use in operating street railways, interurban lines, street lighting, and lighting in homes under franchise of the petitioner and also for operating manufacturing plants," which altogether constitute one finding as made by the court. Because of the language first above quoted, it is argued, in effect, that, since the same servitude would be imposed on the land if all of the power transmitted over the lines thereon was devoted to a really public use, it is immaterial to the rights of the parties if a part of the power transmitted be devoted to a private use. The argument is not convincing because it neither comprehends nor answers the vital question in the case. The real test or question is, what is the contemplated use of the power intended to be transmitted over lines for the erection and maintenance of which the property is sought to be taken? We think it must be held that the conclusion of the trial court was right.
The order denying the petition is affirmed.
TOLMAN, C.J., MAIN, PARKER, MACKINTOSH, BRIDGES, and ASKREN, JJ., concur.