[No. 50992–1.   En Banc.   October 24, 1985.]

*In the Matter of* THE CITY OF SEATTLE.

THE CITY OF SEATTLE, *Respondent,* v. MALL, INC., *Appellant.*

*Ferguson & Burdell,* by *Thomas J. Greenan,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Michael Monroe, Assistant,* for respondent.

DORE, J.—This proceeding concerns a condemnation action by the City of Seattle to acquire land on which to build a city park. The owner of the property, Mall, Inc., appeals the trial court's entry of an order of public use and necessity. We affirm.

## FACTS

This case is a continuation of the dispute, previously seen by this court in *In re Seattle,* 96 Wn.2d 616, 638 P.2d 549 (1981), over the efforts of the City of Seattle to condemn property for the Westlake Project. As originally conceived, this project was to include a public park and other open spaces, a parking garage, a new monorail terminal, an art museum, and approximately 186,000 square feet of retail and cinema space which the City would lease to private parties. This court in *In re Seattle* held that the City's proposed project was for both public and private purposes and that, accordingly, the City could not use its condemnation power to acquire the needed property.

Following this court's decision, the City devised a new method of achieving its goals. The City had already acquired some of the property north of Pine Street, on which the proposed museum and retail establishments were to be built. The City sold this property to a developer on the condition that the developer follow the City's architectural plans. The developer had previously acquired the remaining necessary parcels north of Pine Street from private parties.

The City initiated the present action to condemn adjacent property south of Pine Street to construct a public park. The proposed park and private project will, when completed, be part of a single architectural and aesthetic plan. The park, however, will be owned by the City, whereas the property and buildings north of Pine Street will remain in private ownership.

Mall, Inc., the owner of the property south of Pine Street, resisted condemnation on the ground that the City's plan was the identical one this court had held to be unconstitutional in *In re Seattle*. The trial court rejected this contention and entered an order of public use and necessity and approved condemnation of the subject property.

## ISSUE

Whether this condemnation of property for public park purposes is such an integral and inseparable part of a private development as to not be a public use within the meaning of article 1, section 16 of the Washington State Constitution.

## DECISION

Washington Constitution article 1, section 16 provides that private property may be condemned only for public purposes and "the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public . . ."

For a proposed condemnation to meet the requirement of article 1, section 16 the court must make three separate but interrelated findings: (1) the use must be public; (2) the public interest must require it; and (3) the property appropriated is necessary for the purpose. *In re Seattle*, 96 Wn.2d 616, 625, 638 P.2d 549 (1981); *Des Moines v. Hemenway*, 73 Wn.2d 130, 138, 437 P.2d 171 (1968). The latter two findings are generally subsumed under the definition of "necessity". *See* North, *The Element of Necessity in Washington Eminent Domain Proceedings*, 18 Gonz. L. Rev. 665 (1982–1983).[1]

The Legislature must ordinarily have granted the condemnor the authority to condemn property for a particular purpose in order for the courts to allow condemnation for that purpose. *See In re Seattle*, at 629; *State ex rel. King*

---

[1]Mall, Inc., does not contest the finding of necessity and, as such, this requirement is not at issue.

*Cy. v. Superior Court,* 33 Wn.2d 76, 204 P.2d 514 (1949). The Legislature has specifically granted to cities the authority to acquire property by condemnation for public parks. RCW 8.12.030 provides that cities have the power to "condemn land and property . . . for public parks . . ." It has uniformly been held that the use of land for a public park or other recreational facility constitutes the type of "public use" which will justify condemnation. *See, e.g., United States ex rel. Tenn. Vly. Auth. v. Welch,* 327 U.S. 546, 90 L. Ed. 843, 66 S. Ct. 715 (1946); *Los Angeles v. Superior Court,* 51 Cal. 2d 423, 333 P.2d 745 (1959); *New Jersey Sports & Exposition Auth. v. Mc Crane,* 119 N.J. Super. 457, 292 A.2d 580 (1971); *Martin v. Philadelphia,* 420 Pa. 14, 215 A.2d 894 (1966). This court agreed with these holdings in *In re Seattle,* at 633. Mall, Inc., seems to concede that cities may, as a general proposition, condemn property to construct parks.

The position of Mall, Inc., is that the City's purpose is both public and private; that is, the City may be establishing a park, but the park is so inseparable from and integral to the continuing private development that it cannot be adjudged a public use. In support of this contention, Mall, Inc., relies on this court's prior holding in our earlier case: "If a private use is combined with a public use in such a way that the two cannot be separated, the right of eminent domain cannot be invoked." *In re Seattle,* at 627 (citing *State ex rel. Puget Sound Power & Light Co. v. Superior Court,* 133 Wash. 308, 233 P. 651 (1925)).

The constitutional infirmities we found in *In re Seattle* are absent in this condemnation proceeding. This court's main objection to the original Westlake Project was the use of the power of condemnation for private retail purposes. Not only was this retail function not a public use, no statutory authority existed for such an undertaking. Although the Legislature had authorized the City to condemn "for parks . . . for offstreet parking facilities . . . [and] monorail purposes", the City had no statutory authority "to condemn property for an urban 'focal point', or an urban

shopping center . . ." *In re Seattle,* at 633.

█ In response to *In re Seattle,* the City divested itself of any interest in the private retail functions of the Westlake Project. The City exercised its authority to sell the property it previously acquired and to enter into contracts to limit the use of that property in the future. *See* RCW 35.22.280(3). These contracts require that the private development be compatible and blend with the proposed park. It does not follow, however, that the park is not a public use simply because it will be compatible with and incidentally benefit the Westlake Project retail development. Public parks will almost always benefit private properties that are adjacent to them. The more compatible, the more beneficial the benefits flowing to the adjoining property.

Although Mall, Inc., is correct in stating that the City is continuing to pursue the long–standing Westlake Project objectives, the City is now doing so pursuant to legal authority. The City is now condemning property for only one purpose—to establish a park. Although the City is pursuing other activities adjacent to the proposed park, those activities do not involve the use of the City's power of eminent domain. Insofar as that power is concerned, there is a total absence of mixing of public and private uses.

## CONCLUSION

The City of Seattle has eliminated the constitutional infirmities involving the use of condemnation powers in the Westlake Project. Seattle is now condemning property for only one purpose—to establish a city park. We find this condemnation a public use and affirm the trial court's order.

DOLLIVER, C.J., and BRACHTENBACH, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

UTTER, J. (concurring)—While I concur in the majority's result, I do so based on my dissent in *In re Seattle,* 96 Wn.2d 616, 635, 638 P.2d 549 (1981). That Mall, Inc., is

again before us to challenge the Westlake Project suggests that the court's use of the term "incidental" remains unworkable, as well as anomalous within our case history. *See In re Seattle, supra* at 643 (Utter, J., dissenting). The present court recognizes that "the City is continuing to pursue the long–standing Westlake Project objectives . . ." Majority, at 625. In spite of maintaining the same basic goals as it had before, the City now prevails because it has successfully repackaged the plan. This only demonstrates, however, that the retail element of the original project was, and is, subordinate to the City's broader public goals.

Mall, Inc., on the other hand, might well be skeptical of the *In re Seattle* court's heavy reliance on *State ex rel. Puget Sound Power & Light Co. v. Superior Court,* 133 Wash. 308, 312, 233 P. 651 (1925). I have already discussed at length the reasons why *Puget Sound* is factually inapposite to the Westlake Project. *See In re Seattle, supra* at 637–38 (Utter, J., dissenting). Nevertheless, it is appropriate to recall the *Puget Sound* court's method of determining whether the contemplated use of the property is "really public." "'[C]ourts look to the substance rather than the form, to the end rather than to the means.'" *Puget Sound,* at 312. It is regrettable that, at considerable expense, the City of Seattle has had to reshape its form and alter its means to achieve the substance of its long–recognized ends.