[No. 55837-4-I.   Division One.   August 15, 2005.]

THE CITY OF BLAINE, *Respondent*, v. FREDA FELDSTEIN ET AL.,
*Appellants*.

*T. Gregory Greenan* (of *Zender Thurston, P.S.*), for appellants.

*Jonathan K. Sitkin, Richard A. Davis III*, and *Jon R. Neumann* (of *Chmelik Sitkin & Davis, P.S.*); and *Stephen R. Fallquist*, for respondent.

¶1 COLEMAN, J. — Under the Washington State Constitution, a city may condemn private property for public uses. Here, the city of Blaine (City) petitioned to condemn property to build a public boardwalk in downtown Blaine. Because (1) the trial court did not abuse its discretion in determining that an evidentiary hearing was not required, (2) a public boardwalk constitutes a public use under RCW 8-.12.030, (3) the particular boardwalk proposed by the City constitutes a public use, and (4) there is no evidence that the City's determination of necessity was arbitrary and capricious, we affirm the trial court's decision finding public use and necessity.

*FACTS*

¶2 In September 2004, the city of Blaine filed a petition to condemn property belonging to the Feldstein family to construct a public boardwalk in downtown Blaine. The City filed a motion for an issuance of an order adjudicating public use and necessity. Feldstein objected to this procedure and moved to strike the hearing, arguing that he was entitled to an evidentiary hearing to determine public use and necessity. Feldstein also moved to strike the City's declarations submitted in support of its motion. The trial court denied Feldstein's motions.

¶3 Following a hearing, the trial court granted the City's motion for entry of an order on public use and necessity. The trial court also entered findings of fact and conclusions of law regarding public use and necessity. Feldstein moved for reconsideration, which the trial court denied. Feldstein filed a timely notice of appeal.

## ANALYSIS

■ ¶4 Under the Washington State Constitution article I, section 16, property may be condemned only for public uses.

> Whenever an attempt is made to take private property, for a use alleged to be public under authority of this chapter, the question whether the contemplated use be really public shall be a judicial question and shall be determined as such by the court before inquiry is had into the question of compensation to be made. . . . Except as herein otherwise provided, the practice and procedure under this chapter in the superior court and in relation to the taking of appeals and prosecution thereof, shall be the same as in other civil actions . . . .

RCW 8.12.090. Feldstein argues that RCW 8.12.090 clearly contemplates a testimonial evidentiary hearing to determine whether the City's proposed boardwalk constituted a public use. RCW 8.12.090, however, does not state that a testimonial evidentiary hearing is required. Rather, the statute requires that the same procedures used in "other civil actions" be used. In other civil actions, testimonial hearings are not always required. Under CR 7(b) "[a]n application to the court for an order shall be by motion . . . ." The trial court has the discretion to determine whether there are factual and credibility issues that require a testimonial hearing. If there are no relevant factual disputes or credibility issues and the record is sufficient to fully inform the court, the case may be properly resolved without a testimonial hearing.

¶5 Feldstein cites to several condemnation cases where it appears that testimonial evidence was presented to the trial court. *See State v. Brannan*, 85 Wn.2d 64, 66, 530 P.2d 322 (1975) (experts testified); *State v. Belmont Improvement Co.*, 80 Wn.2d 438, 495 P.2d 635 (1972) (experts testified); *State v. Kingman*, 77 Wn.2d 551, 552, 463 P.2d 638 (1970) (discusses CR 52(c) which applies to bench trials); *City of Des Moines v. Hemenway*, 73 Wn.2d 130, 132, 437 P.2d 171 (1968) (trial held); *State v. Burdulis*, 70 Wn.2d 24, 25, 421

P.2d 1019 (1966) (mentions cross-examination of a state witness); *State ex rel. Puget Sound Power & Light Co. v. Superior Court for Snohomish County*, 133 Wash. 308, 309, 233 P. 651 (1925) (trial held). These cases, however, do not stand for the proposition that an evidentiary hearing with live testimony is required in all condemnation cases. The fact that trial courts hear oral testimony in some condemnation cases does not mean that a trial court must hear oral testimony in all cases. Likewise, Feldstein's argument that the City has failed to cite any cases where a testimonial hearing was not held in a condemnation case does not provide us with any guidance. The trial court must exercise its discretion in determining whether a testimonial hearing is required, and this determination depends on the circumstances of the case and the adequacy of the record presented to the trial court.

¶6 Here, the facts necessary to resolve the case are not in dispute.[1] Additionally, there were no credibility issues before the court. Indeed, even when pressed at oral argument, counsel for Feldstein could not identify what evidence he would have put on had the trial court allowed him to present testimony at the hearing. The trial court had all of Feldstein's objections to the project and the basis for those objections before it. The court had all of the information necessary, including briefs, deposition transcripts, and affidavits, to make an informed decision on whether the City's proposed boardwalk constituted a public use and whether condemning Feldstein's property was necessary for that use. Therefore, the trial court did not abuse its discretion in making this determination without hearing oral testimony.[2]

---

[1] Feldstein may not agree with all of the facts of the case, but those necessary for the court's resolution of this case are not disputed. It is clear that the boardwalk, while part of an overall economic revitalization project, will be open to the public and will provide the public with views of the harbor and surrounding vistas. It is also clear that the boardwalk will be owned by the City and will not be leased or sold to private entities for private use. Feldstein clearly objects to the City's plans to build a boardwalk, and the basis for his objections were before the city council and the trial court and are before us on appeal.

[2] Feldstein also argues that the trial court erred in denying his motion to strike the City's declarations submitted in support of their motion for an order adjudi-

¶7 Next, we consider whether the trial court erred in determining that the proposed boardwalk constitutes a public use for the purpose of condemnation. "A decree of public use and necessity may be entered for a proposed acquisition only when (1) the use in question is really a public use, (2) public interests require it, and (3) the property to be acquired is necessary to facilitate the public use." *Hemenway*, 73 Wn.2d at 138. RCW 8.12.030 authorizes cities to condemn private property for public use:

> Every city and town and each unclassified city and town within the state of Washington, is hereby authorized and empowered to condemn land and property, including state, county and school lands and property for *streets, avenues, alleys, highways . . . public parks, drives* and *boulevards . . .* and for *any other public use* after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter.

RCW 8.12.030 (emphasis added). Feldstein argues that because a boardwalk is not one of the enumerated public uses in RCW 8.12.030, the City does not have the authority to condemn property for this use. While the statute does not specifically list "boardwalk" as a public use, the statute does list streets, avenues, alleys, public parks, drives, and boulevards. The statute also states that property may be condemned for "any other public use."

¶8 Here, the City proposed to build a pedestrian boardwalk. This is akin to a street, alley, or avenue that is restricted to use by pedestrians. The boardwalk will be used to convey pedestrians, just as a street is used to convey vehicles and/or pedestrians. Additionally, the boardwalk is like a park, as it allows the public to access scenic views. Furthermore, the boardwalk would fall under the "any other public use" provision of the statute. Application of this provision "is restricted to uses which are of the same kind

---

cating public use. Feldstein argues that the documents submitted in support of the City's motion all constitute inadmissible hearsay, and therefore, there is no evidentiary support for the trial court's decision. The documents in question, however, are admissible under ER 803(a)(8), ER 902, and RCW 5.44.040.

as those enumerated in the section or which are specifically authorized by the legislature." *In re Petition of City of Seattle*, 96 Wn.2d 616, 633, 638 P.2d 549 (1981). As noted above, a boardwalk is akin to several of the enumerated uses in RCW 8.12.030 and thus "of the same kind" as those enumerated in the statute. Therefore, as a matter of law, a public boardwalk is a public use under RCW 8.12.030.

█ ¶9 Having determined that RCW 8.12.030 authorizes a city to condemn property for a public boardwalk, the next issue we address is whether this particular boardwalk proposed by the City constitutes a public use. A trial court's decision on public use will be reversed if the finding is not supported by substantial evidence. *State v. Bank of Cal.*, 5 Wn. App. 861, 866, 491 P.2d 697 (1971). Feldstein focuses on several comments made by members of the Blaine City Council and other Blaine officials dealing with the boardwalk as part of the economic revitalization of Blaine. Contrary to Feldstein's arguments, these statements are not conclusive on the issue of public use. Two cases involving the Westlake Center project in downtown Seattle are particularly helpful in resolving this issue, *In re Petition of City of Seattle*, 96 Wn.2d 616, 638 P.2d 549 (1981) (*Westlake* I) and *In re Petition of City of Seattle*, 104 Wn.2d 621, 707 P.2d 1348 (1985) (*Westlake* II).

¶10 Initially, the city of Seattle proposed a comprehensive architectural plan for the Westlake project. Seattle sought to condemn properties for the entire project, which would include a public park, exterior public open spaces, a public parking garage, a new monorail terminal, an art museum, retail and cinema space, and interior circulation systems within the new buildings. Seattle sought to condemn the property necessary for this project and proposed to lease or transfer much of the property to private entities. The Washington Supreme Court held that this was not a public use. The court stated: "[W]here the purpose of a proposed acquisition is to acquire property and devote only a portion of it to truly public uses, the remainder to be rented or sold for private use, the project does not constitute public use." *Westlake* I, 96 Wn.2d at 627-28.

¶11 After the *Westlake* I decision, the city of Seattle revised its plans for the Westlake project. Seattle sold the property that it had already acquired to construct the museum and retail establishments on the condition that the developer follow Seattle's architectural plans when developing the property. Then, Seattle petitioned to condemn property to build a public park. The park and the private projects were still "part of a single architectural and aesthetic plan," but the retail portions would all be owned by private entities and only the park would be owned by Seattle. *Westlake* II, 104 Wn.2d at 622. The property owner opposed the condemnation petition, arguing that Seattle's plan was identical to the plan rejected in *Westlake* I. The Supreme Court approved the condemnation of the property for the park, despite the park's ties with the retail goals of the Westlake project. The court held, a "park is not a public use simply because it will be compatible with and incidentally benefit the Westlake Project retail development. Public parks will almost always benefit private properties that are adjacent to them. The more compatible, the more beneficial the benefits flowing to the adjoining property." *Westlake* II, 104 Wn.2d at 625.

¶12 Feldstein argues that the court's decision in *Westlake* I requires a finding that the proposed boardwalk is not a public use. *Westlake* I, however, is clearly distinguishable. There, Seattle sought to condemn property that would be sold or leased to private entities for purely private uses. Here, the City seeks only to condemn the property for use as a public boardwalk. It is not proposing to lease or sell any land to private entities. *Westlake* II, on the other hand, is directly on point. The court there made it clear that the public park was a part of Seattle's overall "architectural and aesthetic plan" that was the subject of the *Westlake* I suit. In *Westlake* II, the court held that condemning the property for a park was a public use, despite its obvious role in the overall economic goal of the Westlake project. Likewise, the evidence here supports the trial court's finding that the boardwalk proposed by the City is for the public's

use and enjoyment. The boardwalk will preserve, for the public, views of the harbor and surrounding vistas and provide a place for community activities and events. While the City does envision the boardwalk to be a part of the economic revitalization of Blaine, this does not prevent the boardwalk itself from being a public use. Thus, the trial court's determination that the proposed Blaine boardwalk is a public use and subject to the condemnation power of the City is supported by substantial evidence.

¶13 The final issue we address is whether the City acted arbitrarily and capriciously, amounting to constructive fraud, in determining that condemning Feldstein's property was necessary. In the context of eminent domain, "necessity" means reasonably necessary under the particular circumstances. *City of Tacoma v. Welcker*, 65 Wn.2d 677, 683, 399 P.2d 330 (1965). "[Q]uestions concerning whether a particular acquisition is necessary to carry out a proposed public use are legislative." *Hemenway*, 73 Wn.2d at 139. A city council's determination that condemning property is necessary is "conclusive in the absence of fraud or arbitrary conduct amounting to constructive fraud." *Town of Medical Lake v. Brown*, 63 Wn.2d 41, 45, 385 P.2d 387 (1963). Feldstein bears the burden of showing actual or constructive fraud by the City. *Welcker*, 65 Wn.2d at 684. To show constructive fraud, Feldstein must show arbitrary and capricious conduct, which is

> willful and unreasoning action, without consideration and regard for facts or circumstances. Action, when exercised honestly, fairly, and upon due consideration is not arbitrary and capricious, even though there may be room for a difference of opinion upon the course to follow, or a belief by the reviewing authority that an erroneous conclusion has been reached.

*Welcker*, 65 Wn.2d at 684-85 (citation omitted).

¶14 Feldstein argues that the City's decision to locate the boardwalk between G and H Streets was arbitrary and capricious. It appears from the record, however, that the subject of this boardwalk was before the City since the 1990s and that the location has included Feldstein's prop-

erty.[3] For example, the 1993 Blaine Urban Waterfront Development Plan lists a "Boardwalk west of Peace Portal buildings from G Street to Martin Street," which includes the property located between G and H Streets, as one of the planned downtown pedestrian improvements. It also appears that the location between G and H Streets has the most direct access to both downtown Blaine and the Port of Bellingham's Blaine Harbor. Feldstein has not shown that the City's actions were arbitrary and capricious in determining that this location was necessary.

¶15 Feldstein also argues that the City's decision to build a boardwalk itself was arbitrary and capricious. Feldstein argues that the City's conclusion that the boardwalk will serve as a tool for economic revitalization is purely speculative and not based on any quantitative studies. Feldstein dedicated much of his briefing, both before this court and the trial court, on what he deems the "disastrous economic consequences" of building this boardwalk. The advisability of proceeding with such a project, however, is not conclusive to determining whether condemning Feldstein's property is necessary for the project. The record shows that for years the City has contemplated some economic revitalization plan and that a boardwalk has been part of that plan. It is clear that Feldstein strongly disagrees with the City's conclusion that the boardwalk will serve this function. Feldstein's disagreement with the City's conclusion, however, does not mean that the City acted arbitrarily and capriciously. Reasonable minds could clearly differ on whether building this boardwalk is desirable. Feldstein has not shown any arbitrary and capricious conduct amounting to constructive fraud.

¶16 Feldstein also argues that the City's actions were arbitrary and capricious because it did not give his arguments sufficient consideration. The record, however, does not support this argument. Before adopting the ordinance authorizing the condemnation petition, the City Council

---

[3] The proposed boardwalk will be a phased project, with the property at issue being the first phase of development.

allowed Feldstein to present his argument orally. He was allowed to speak for 30 minutes and engaged in dialogue with the mayor. Additionally, Feldstein submitted written materials that contained the arguments he made during his presentation. The minutes of this Council meeting contain a summary of Feldstein's oral arguments, which mirror those submitted in writing. It is clear that the Council had Feldstein's concerns and basis for those concerns before it. There is nothing in the record to support Feldstein's argument that the City's actions in determining that condemning his property for this public use was necessary were arbitrary and capricious, and we therefore affirm the decision of the trial court.

¶17 Affirmed.

APPELWICK, J., and COOK, J. Pro Tem., concur.