[No. 22192. *En Banc.* June 17, 1930.]

THE STATE OF WASHINGTON, *on the Relation of the City of Walla Walla, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

*Herbert Ringhoffer,* for relator.

*The Attorney General* and *Chas. O. Flint,* for respondent.

MILLARD, J.—This is an original application in this court for a peremptory writ of mandamus requiring the state auditor to accept bonds issued by the city of Walla Walla, and to deliver to the city a warrant in payment therefor. The state auditor demurs, upon the ground that the petition does not state facts sufficient to constitute a cause of action. The record, as it is now before us, discloses the following facts:

The city of Walla Walla is a municipal corporation of the second class, operating under the commission form of government. Authority to borrow fifty thousand dollars and to issue its negotiable general obliga-

[1]Reported in 289 Pac. 61.

tion serial bonds in that amount for the establishment of a municipal airport, either within or without the corporate limits of Walla Walla, was granted by the electors of Walla Walla at a special election called pursuant to an ordinance passed by the city commission at a regular meeting. The bid of the state board of finance of the state of Washington for the bonds was accepted. The state auditor refused to accept the bonds and to deliver a warrant in payment for same. The reason stated by the auditor for his refusal is that, "The city of Walla Walla has no authority to expend money for airport development outside its city limits."

Counsel for respondent argues that, in the absence of express authority therefor, and the power sought to be exercised not being implied or incident to the powers expressly granted or indispensable to the declared objects and purposes of the corporation, a municipal corporation of the second class may not acquire and maintain an airport outside of the corporate limits of such municipality.

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." *State ex rel. Port of Seattle v. Superior Court,* 93 Wash. 267, 160 Pac. 755, L. R. A. 1917B 354.

The statute authorizing municipal corporations to acquire and maintain sites and facilities for aerial transportation, and declaring such purpose to be a municipal purpose and a public use, reads as follows:

"That all cities, towns, port districts and counties are authorized and empowered by and through their appropriate corporate authorities to acquire, maintain and operate sites and other facilities for landings, terminals, housing, repair and care of dirigibles, airplanes and seaplanes for the aerial transportation of persons, property or mail; and to acquire by purchase, condemnation or lease all lands and other property necessary therefor, and to dispose of such lands and other property for public use whenever acceptance thereof on behalf of the United States for aviation purposes shall be authorized by Act of Congress; and the same is hereby declared to be a municipal purpose and a public use. Cities, towns, port districts and counties are hereby empowered to acquire lands and other property for said purpose by the exercise of the power of eminent domain under the same procedure as is or shall be provided by law for the condemnation and appropriation of private property for any of their respective corporate uses, and no property shall be exempt from such condemnation, appropriation or disposition by reason of the same having been or being dedicated, appropriated or otherwise held to public use. All acts of any such municipality in the exercise or attempted exercise of any powers herein conferred are hereby ratified and confirmed." Laws of 1929, p. 180, § 1.

The foregoing is silent as to whether the airport must be within or may be without the corporate limits of the acquiring municipality. That is not, however, indicative of a legislative purpose to withhold from second-class cities the power to acquire and maintain airports outside the city limits, in view of the earlier expression of the legislature specifically and expressly empowering such cities to acquire, by eminent domain, property within or without the city for corporate purposes; and in view of the further fact that the acquisition and maintenance of an airport by a municipal corporation is, by the 1929 act, declared to be, and is, a corporate purpose.

"The right of eminent domain is hereby extended to any such city for the condemnation of lands and other property, either within or without the corporate limits of such city, for any and all corporate purposes and every such city shall have the right to appropriate real estate or other property, either within or without the corporate limits of such city, for any and all municipal purposes in the same manner and under the same procedure as now is or may hereafter be provided by law in cases of other corporations authorized by laws of the state of Washington to exercise the right of eminent domain; Provided, that this section shall be construed as a concurrent and cumulative power conferred on such cities, and shall not be construed as in any wise repealing or affecting any law now in force conferring the power of eminent domain and the right to appropriate property on any such city, and in particular, this act shall not be construed as in any wise repealing or affecting the powers conferred on any such city by chapter 55, of the Session Laws of Washington for the year 1905." Rem. Comp. Stat., § 9072; Laws of 1907, p. 666, § 69.

The rule that a municipal corporation cannot exercise its governmental authority outside its limits has nothing to do with the case at bar. While a city cannot exercise governmental authority outside its corporate limits, the municipality may exercise its right to own and use property for legitimate city purposes outside its boundaries. Unquestionably, the 1929 aviation act authorizes cities of the second class to acquire and maintain airports within the corporate limits. That the purpose is a corporate purpose, is just as clear. The maintenance of an airport is a legitimate municipal purpose. *Hesse v. Rath,* 224 App. Div. 344, 230 N. Y. Supp. 676, 1928 U. S. Av. R. 315.

The language of § 9072, *supra,* is not ambiguous. It clearly grants the power to acquire by eminent domain land within or without the city for corporate purposes. The 1929 aviation act is supplemental thereto, specific-

ally authorizing the acquisition, maintenance and operation of airports by purchase, condemnation or lease, and declaring the same to be a "municipal purpose and a public use." As stated in *Spokane v. Williams, ante* p. 120, 288 Pac. 258:

"Appellants seem to rely solely upon the airport statute, Laws of 1925, Ex. Ses., p. 30 (Rem. 1927 Sup., § 905-1), in contending that, since that statute does not specifically provide for the taking of property outside the city limits, therefore the power to do so for that purpose has been withheld. However, resting the question on that one statute is not justified. That statute was but a further expression of the legislature which, together with existing statutes upon the subject, gave and was intended to give cities like Spokane power to keep abreast with the increasing modern demands for air transportation. There was no need to repeat in the airport act all existing statutory powers such cities already enjoyed, but only to supplement them, if necessary, by specifically authorizing them to acquire, maintain and operate airports, to purchase, condemn or lease property therefor, and declaring 'the same to be a city and county purpose and public use.' "

We do not agree with the contention of respondent that the proviso of § 9072, *supra,* renders the section insufficient of itself and necessitates other authority to empower the relator to acquire property by eminent domain outside the municipal limits. So far as pertinent, the proviso reads as follows:

" . . . that this section shall be construed as a concurrent and cumulative power conferred on such cities, . . . this act shall not be construed as in anywise repealing or affecting the powers conferred on any such city by chapter 55 of the session laws of Washington for the year 1905."

That part of ch. 55, Laws of 1905, p. 84, referred to, was amended by § 1, ch. 154, Laws of 1915, p. 446 (Rem. Comp. Stat., § 9215), and reads as follows:

"Every city and town and each unclassified city and town within the state of Washington, is hereby authorized and empowered to condemn land and property, including state, county and school lands and property for streets, avenues, alleys, highways, bridges, approaches, culverts, drains, ditches, public squares, public markets, city and town halls, jails and other public buildings, and for the opening and widening, widening and extending, altering and straightening of any street, avenue, alley or highway, and to damage any land or other property for any such purpose, or for the purpose of making changes in the grade of any street, avenue, alley or highway, or for the construction of slopes or retaining walls for cuts and fills upon real property abutting on any street, avenue, alley or highway now ordered to be, or such as shall hereafter be ordered to be opened, extended, altered, straightened or graded, or for the purpose of draining swamps, marshes, tide lands, tide flats or ponds, or filling the same, within the limits of such city, and to condemn land or property, or to damage the same, either within or without the limits of such city for public parks, drives and boulevards, hospitals, pesthouses, drains and sewers, garbage crematories and destructors and dumping grounds for the destruction, deposit, or burial of dead animals, manure, dung, rubbish, and other offal, and for aqueducts, reservoirs, pumping stations and other structures for conveying into and through such city a supply of fresh water, and for the purpose of protecting such supply of fresh water from pollution, and to condemn land and other property and damage the same for such and for any other public use after just compensation having been first made or paid into court for the owner in the manner prescribed by this act."

Prior to the enactment of Rem. Comp. Stat., § 9072, ch. 55, Laws of 1905, p. 84, was the eminent domain statute for municipal corporations. Section 9072, Rem. Comp. Stat., was passed by the house March 2, 1907, by the senate on March 12, 1907, and went into effect the date of its approval by the governor, March 18,

1907, as it had an emergency clause. By ch. 153, Laws of 1907, p. 316, ch. 55, Laws of 1905, p. 84, was amended, granting additional right of condemnation in the cases of garbage crematories, etc. Chapter 153 was passed by the senate February 26, 1907, by the house, March 6, 1907, and approved by the governor March 13, 1907. That act became effective June 11, 1907, as it had no emergency clause. Section 56, ch. 153, Laws of 1907, p. 340 (Rem. Comp. Stat., § 9279), reads as follows:

"In so far as this act relates to cities of the second class, this act shall not be deemed to be exclusive or as repealing or superseding any existing law relative to such cities, covering any subject covered by this act, but as to such cities, this act shall be construed as conferring additional powers and additional remedies, to those now provided by law."

It is patent from a reading of §§ 9072 and 9215, Rem. Comp. Stat., that it was the intention of the legislature to give to cities of the second class a broader power of eminent domain, and to be as generous in conferring the powers on such cities as it had been liberal in its grant to cities of the first class.

The writ is granted.

MITCHELL, C. J., FRENCH, MAIN, BEALS, TOLMAN, HOLCOMB, and FULLERTON, JJ., concur.