[No. 39262.    En Banc.    February 1, 1968.]

THE CITY OF DES MOINES, *Petitioner*, v. PATRICIA A. HEMENWAY *et al.*, *Respondents.**

*Reported in 437 P.2d 171.

*Robert J. Verzani* (of *Payne & Verzani*) and *Jack W. Pain* (of *Haugan, Shellan & Pain*), for petitioner.

*Douglas R. Hartwich* (of *Short, Cressman & Cable*) and *Robert K. Keller* (of *Horswill, Keller, Rohrback, Waldo & Moren*), for respondents.

*Robert W. Graham* and *Ronald T. Schaps,* amici curiae.

FINLEY, C. J.—This case is here on a writ of certiorari, sought by petitioner, the city of Des Moines, after the King County Superior Court refused to enter an order of public use and necessity in a condemnation proceeding. The

city is seeking to condemn tidelands owned by respondents for the purpose of constructing, operating, and maintaining a marina, *i.e.*, moorage and other facilities for small boats.

Petitioner is a small, third-class city located on Puget Sound between Seattle and Tacoma. In 1965, petitioner retained the firm of Reid Middleton & Associates, consulting engineers and land surveyors, to develop a comprehensive plan for a marina facility in the city. The firm conducted a thorough study of the area, and submitted a report to petitioner. Pursuant to this report and three surveys conducted by a local chapter of the Junior Chamber of Commerce, petitioner adopted an ordinance authorizing condemnation of respondents' tidelands for a marina. Following adoption of the ordinance, petitioner commenced two condemnation actions against respondents in superior court. These actions were consolidated at the time of trial. The trial court found the proposed marina to be too large to be reasonably necessary for residents of the city, either presently or in the discernible future. As a consequence, it found petitioner's actions to be arbitrary and capricious and refused to enter a decree of public use and necessity.

The city of Des Moines covers an area of approximately one square mile. In 1966, its population was 3,518 people. The proposed marina would necessitate condemnation of approximately 80 per cent of the tidelands within the city limits as well as two pieces of property located outside the city limits (only one of which is involved in this action). The marina would be sheltered by a breakwater and would house 885 boats. The need or demand for boat moorages by residents of the city probably would not exceed 10 per cent of the capacity of the proposed marina. The size of the marina allegedly was dictated by economic difficulties in building and operating a smaller marina, and by the results of the study and surveys mentioned earlier which considered the present and prospective boat moorage needs of individuals within a 10-mile radius of the city. Financing of the marina would be through a loan from the Housing and Home Finance Agency, to be repaid from the marina's revenues. It was on the basis of these

considerations that the trial court reached a decision adverse to the city's proposed marina development.

Petitioner's four assignments of error and respondents' counter-assertions present three general questions for our determination: (1) Does a third-class city have the power to condemn property for development of a marina; (2) if so, must the property involved be located within the city's corporate limits; and (3) if the answer to the first question is affirmative, was the condemnation proposal in the instant case a proper exercise of third-class city powers, in whole or in part? The questions will be discussed in the order indicated.

I.

■ Initially, it must be recognized that petitioner has no power to seek to acquire land, regardless of the means, unless the proposed acquisition is for a public use. *Wiley v. Aberdeen,* 123 Wash. 539, 212 Pac. 1049 (1923). Questions as to whether a proposed acquisition is for a public use are for the judiciary, although a legislative declaration will be accorded great weight. *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963). In the instant case, the trial court concluded that acquisition of property for development of a marina is for a public use, and this conclusion is not challenged on appeal. Furthermore, RCW 35.23.455 specifically provides that marinas are among the public improvements which second, third, and fourth-class cities may construct, operate, and maintain. We are convinced that a third-class city has the power to acquire property to establish a marina, and thus pass to the question whether a third-class city may acquire such property through its powers of condemnation.

■ A municipal corporation's power to condemn is delegated to it by the state legislature. *State ex rel. Tacoma School Dist. No. 10 v. Stojack,* 53 Wn.2d 55, 330 P.2d 567, 71 A.L.R. 1064 (1958). Statutes delegating condemnation powers are to be strictly construed. *Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965). Condemnation powers must be delegated in express terms or exist by clear implication.

*Seattle v. State,* 54 Wn.2d 139, 338 P.2d 126 (1959); *State ex rel. Chesterley v. Superior Court,* 19 Wn.2d 791, 144 P.2d 916 (1944). Thus, a careful review of the applicable statutes is necessary.

Two statutes confer eminent domain powers on third-class cities. These are set forth below, italicized in part to highlight their similar statutory organization and pertinence.

RCW 8.12.030 provides in part as follows:

*Every city* and town and each unclassified city and town within the state of Washington, is hereby *authorized and empowered to condemn* land and property . . . for streets, avenues . . . [and other uses], *within the limits* of such city, and to *condemn* land or property, or to damage the same, *either within or without the limits* of such city for public parks, drives and boulevards, hospitals . . . [and other uses], *and to condemn* land and other property and damage the same for such and *for any other public use* after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter. (Italics ours.)

RCW 35.24.310 provides as follows:

Whenever it shall become necessary for the city to take or damage private property for the purpose of establishing, laying out, extending and widening streets *and other public highways and places* within the city, *or* for the purpose of securing rights-of-way for drains, sewers and aqueducts, and for the purpose of widening, straightening or diverting the channels of streams and the improvement of waterfronts, *or any other public purpose,* and the city council cannot agree with the owner thereof as to the price to be paid, the city council may proceed to acquire, take or damage the same in the manner provided by chapter 8.12 RCW or by chapter 8.20 RCW. (Italics ours.)

■ These statutes, using specific language, delegate to third-class cities the power to condemn property for enumerated public uses and purposes. In addition, the statutes, using general language, delegate to third-class cities condemnation powers to acquire property for "all other" uses and purposes of the same character or nature as those uses

and purposes enumerated in the statutes, *i.e., public* uses and purposes. Since we have already stated that marinas are public uses, it is clear to us that petitioner in the instant case has the power to condemn property for the purpose of constructing, operating, and maintaining a marina. *See State ex rel. Devonshire v. Superior Court,* 70 Wn.2d 630, 424 P.2d 913 (1967).

■ There are two well-established rules for the interpretation of those statutes which contain both specific enumerations and general provisions. We think these rules support the position of the city of Des Moines. The rules are: (1) A statute should, whenever possible, be interpreted so that no portion of it is superfluous, void, or insignificant, and (2) whenever a statute contains specific enumerations of power followed by words granting general powers, the specific enumerations govern the character or nature of the subject matter to be included within the words granting general powers. *E.g., King Cy. Water Dist. No. 68 v. Tax Comm'n,* 58 Wn.2d 282, 362 P.2d 244 (1961); *Miller v. Pasco,* 50 Wn.2d 229, 310 P.2d 863 (1957); *Groves v. Meyers,* 35 Wn.2d 403, 213 P.2d 483 (1950).

Respondents vigorously assert that the reading of the pertinent statutes mentioned hereinbefore fails to satisfy the second above-mentioned rule of statutory construction, *i.e.,* the ejusdem generis rule. According to respondents, our decisions not only suggest that general provisions which are preceded by specific enumerations are restricted to provisions of the same nature and character as the specific enumerations, but that words of general import are no more comprehensive than the specific enumerations. In short, respondents appear to be contending that the only words which are of any effect are the specific enumerations. Respondents cite a number of our prior cases in support of this position, but we believe the only case which might be interpreted to supply support for respondents is *State v. Sterling Theatres Co.,* 64 Wn.2d 761, 394 P.2d 226 (1964).

In *Sterling,* we were asked to construe section 17 of the Consumer Protection Act of 1961, now RCW 19.86.170, in

relation to federal antitrust law. Section 17 at that time provided as follows:

Nothing in this act shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington public service commission, the federal power commission *or any other regulatory body or officer* acting under statutory authority of this state or the United States. (Italics ours.)

We concluded that this provision did not exempt the Sterling Theatres Company from the consumer protection laws, even though the United States Attorney General, acting under the Sherman Act, could regulate the disputed transactions. In *Sterling Theatres, supra,* at 766, 394 P.2d at 229 we said:

The term, "regulatory officer," must be read in connection with both the preceding terms and the intent of the entire act. The governing rule of interpretation is that precise terms modify and restrict the interpretation of the general terms where both are used in sequence. . . . We conclude that the term, "regulatory officer," does not include the Attorney General of the United States in his capacity of enforcing the federal antitrust laws.

It should be apparent from the above passage that we did *not* hold that *only* those actions or transactions controlled by commissions and commissioners specifically enumerated in section 17 are immune from the effects of the consumer protection laws. Such a holding would have rendered the phrase "or any other regulatory body or officer" meaningless, contrary to the first rule of statutory construction cited earlier. *Miller v. Pasco,* 50 Wn.2d 229, 310 P.2d 863 (1957). All we held was that, keeping in mind the purpose of the entire act, the phrase "or any other regulatory body or officer" must be limited to bodies and officers of a similar nature or character as those named in the statute, and that *in this case* the term "regulatory officer" did not include the United States Attorney General in his capacity of enforcer of certain laws. Certainly there

is nothing in this case which supports the interpretation of the ejusdem generis rule which respondents assert.

Statements concerning legislative intent often seem to be of dubious validity. However, our decision in the instant case does in fact appear to be consistent with the intent of the legislature. During debate on the floor of the Washington State House of Representatives over the bill which has since become RCW 35.23.455 (declaring marinas to be public uses), Representative Warnke stated that he was sponsoring the bill for the express purpose of enabling the city of Des Moines to build a marina. House Journal, Thirty-ninth Legislature (1965) at 900. While this statement alone is not conclusive, it does seem to be a strong indication of "legislative intent."

We thus hold that, under applicable principles and rules of statutory construction, emphasizing particularly what seems to have been the manifest intent of the legislature, third-class cities have the power to condemn property for the purpose of constructing, operating, and maintaining marinas.

## II.

Respondents Melvin Medgard and Vera Thomas Medgard, the only respondents whose property is situated outside petitioner's corporate limits, contend that in any event a third-class city's power to condemn property for a marina site is confined to property within its city limits, and that therefore petitioner has no power to proceed against them. With this contention we agree.

It is generally held that a municipality has no power to condemn property outside its limits unless such power is expressly delegated by the legislature. 11 E. McQuillin, Municipal Corporations § 32.66 (3d rev. ed. 1964), and cases cited therein. While apparently we have never passed on the precise point, we have implicitly given our approval to this rule on at least two occasions. *Tacoma v. Titlow*, 53 Wash. 217, 101 Pac. 827 (1909); *Puyallup v. Lacey*, 43 Wash. 110, 86 Pac. 215 (1906). (*Cf. State ex rel. Walla Walla v. Clausen*, 157 Wash. 457, 289 Pac. 61 (1930).) We feel the

rule is a proper one and should be followed in this case. It therefore is our judgment that a third-class city may not exercise the power of eminent domain beyond its corporate limits without clear legislative authority, either expressly conferred or clearly implied.

■ In our judgment, no legislative authority exists in the instant case for a third-class city to condemn property beyond its corporate limits for the purpose of constructing a marina. RCW 35.24.310 makes no reference to condemnation beyond a city's corporate boundaries, and no such power may be implied from it. RCW 8.12.030 does provide for condemnation outside a city's corporate boundaries for limited and exclusive purposes. However, none of these purposes include, nor may be construed to include, construction of a marina. Consequently, petitioner has no power to bring condemnation proceedings against respondents Medgard.

## III.

■ Condemnation requires entry of three separate judgments. First, there must be a decree of public use and necessity. Next, entry of a judgment fixing the amount of the condemnation award is necessary. Finally, a decree must be entered transferring title. *State ex rel. Washington Water Power Co. v. Superior Court*, 41 Wn.2d 484, 250 P.2d 536 (1952). The final question presented for our determination is whether a decree of public use and necessity should have been denied in the instant case.

■■ A decree of public use and necessity may be entered for a proposed acquisition only when (1) the use in question is really a public use, (2) public interests require it, and (3) the property to be acquired is necessary to facilitate the public use. *State ex rel. Sternoff v. Superior Court*, 52 Wn.2d 282, 325 P.2d 300 (1958). A determination that an acquisition is for a "public use" is not precisely the same thing as determining it is a "public necessity," even though the two terms do overlap to some extent. *King Cy. v. Theilman*, 59 Wn.2d 586, 369 P.2d 503 (1962). Questions concerning whether a proposed acquisition is for a public use are

judicial, although a legislative declaration will be accorded great weight. *Hogue v. Port of Seattle*, 54 Wn.2d 799, 341 P.2d 171 (1959). However, questions concerning whether a particular acquisition is necessary to carry out a proposed public use are legislative. *Tacoma v. Welcker*, 65 Wn.2d 677, 399 P.2d 330 (1965). A declaration of necessity by a proper municipal authority, such as petitioner in the instant case, is conclusive in the absence of proof of actual fraud or such arbitrary and capricious conduct as would constitute constructive fraud. *Tacoma v. Welcker, supra; State ex rel. Church v. Superior Court*, 40 Wn.2d 90, 240 P.2d 1208 (1952). In the instant case, we have already held that the proposed acquisitions are for a public use. Thus, the remaining question concerns only the necessity of the acquisitions.

The trial court made no finding of actual fraud, and, in fact, in its oral opinion it stated that it did not want to imply in any way by its decision that petitioner failed to exercise good faith. The trial court based its judgment solely upon the ground that petitioner's conduct was arbitrary and capricious. Consequently, our only concern is whether this was an apt characterization of petitioner's conduct.

The capacity of the proposed marina is far in excess of the needs of the residents of petitioner-city, and thus most of the boat owners using the facilities will have to come from outside the city limits if the marina is to be successful. For this reason, respondents contend that petitioner acted in an arbitrary and capricious manner in making the proposal. It is respondents' position that a city has no power to provide facilities which will be used primarily by individuals residing outside its limits and only secondarily by individuals residing inside its limits. To support their position, respondents cite *State ex rel. PUD No. 1 v. Wylie*, 28 Wn.2d 113, 182 P.2d 706 (1947), and *Farwell v. Seattle*, 43 Wash. 141, 86 Pac. 217 (1906).

Neither *Wylie* nor *Farwell* provides support for respondents' position, and neither can we. Both cases involved attempts by municipal corporations through extensions of services to act in a municipal capacity beyond their

corporate limits. It is one thing for a municipality to attempt to establish services beyond its corporate limits, and it is quite another for a municipality to attempt to establish services within its corporate limits which are to be utilized by individuals who may or may not reside within its corporate limits but who must come within the corporate limits to avail themselves of the services. *Cf. Wilson v. Mountlake Terrace,* 69 Wn.2d 148, 417 P.2d 632 (1966). At most, the relationship between the quantum of benefit to go to residents of a city from one of its proposed projects and the quantum of benefit to go to nonresidents of the city from the proposed project is but one of many factors to be considered in determining whether the proposed project is the result or arbitrary and capricious action.

The word "necessary," as used in connection with eminent domain statutes, means reasonable necessity under the circumstances. *State ex rel. Lange v. Superior Court,* 61 Wn.2d 153, 377 P.2d 425 (1963). It does not mean immediate, absolute, or indispensable need, but rather considers the right of the public to expect or demand that certain services be provided. *Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965). In the instant case, the trial court stated in its oral opinion that a marina smaller than that contemplated by petitioner would be economically impractical. The trial court found that there are sufficient boat owners within a 10-mile radius of petitioner-city to make the contemplated marina a likely success, and that in any event the cost of constructing the marina (and any risk of loss) would not be borne by the city's residents but would be financed through revenue bonds. Despite its finding that 90 per cent of the space in the proposed marina would be used by non-residents, the trial court stated in its oral opinion that construction of the marina would be of substantial benefit to the residents of the city. It seems clear that the trial court's findings, as amplified by its oral opinion, *State v. Mallory,* 69 Wn.2d 532, 419 P.2d 324 (1966), do not support its conclusion that petitioner acted in an arbitrary and capricious manner in seeking to condemn respondents' tidelands for a marina. Consequently, the trial

court erred in refusing to enter a decree of public use and necessity as to the property situated within petitioner's corporate limits. *Cf. West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.,* 66 Wn.2d 513, 403 P.2d 833 (1965).

The judgment of the trial court is affirmed insofar as it affects respondents Medgard. Insofar as it affects the remainder of the respondents, the judgment is reversed and the case remanded for entry of a decree of public use and necessity and for further condemnation proceedings not inconsistent with this decision.

It is so ordered.

WEAVER, HUNTER, HAMILTON, HALE, and NEILL, JJ., concur.

HILL and ROSELLINI, JJ., concur in the result.

