IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CITY OF WALLA WALLA, | ) | |
| | ) | No. 32604-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY KNAPP, property owner, and | ) | UNPUBLISHED OPINION |
| Walla Walla County, lienholder, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Terry Knapp appeals from an order condemning his property, challenging the procedure used by the city of Walla Walla (City) in the exercise of its eminent domain authority. We affirm.

FACTS

Mr. Knapp owned a house at 712 Whitman Street that had been subject to complaints by neighbors dating to the 1990s. The neighborhood was characterized as one with quality older homes in generally good maintenance only five blocks from Pioneer Park in Walla Walla.

City involvement with the property dates to 1995 when it placed a "stop work" order on the property because work in progress exceeded the scope of a permit. In 2001, the City declared a shed of substandard construction to be dangerous. In 2003, the house

was in disrepair, violated several building codes, and the property was being used to store at least 15 vehicles. Mr. Knapp made efforts to comply with the City's codes and standards at the City's request, but the subsequent inspection revealed additional problems not observable from the exterior. These included unauthorized and incomplete additions to the building, as well as structural, plumbing, electrical and mechanical violations that rendered the dwelling unsafe. Clerk's Papers (CP) at 323-328. The resulting problems were extensive and included inadequate safety exits and fire hazards, inadequate ventilation for sewage, inadequate temperature control, exposed live wiring, and creation of an attractive nuisance. Consequently, Mr. Knapp was ordered to vacate. CP at 324.

Mr. Knapp did not correct the substandard conditions, but in 2005 he obtained a permit for repairs. He, however, failed to get inspections and the permit was revoked. By that time, he also had stopped paying the utility bill, leading to the water being disconnected in February of 2005. The City again declared the house dangerous and ordered its abatement. CP at 331-339. Mr. Knapp removed the notices and continued to live there.[1] In 2007, the City again issued a "stop work" order and posted notices of danger. CP at 397. In addition to the problems with the structure, the property had

---

[1] Since the property was without water, its backyard began being used by occupants to defecate. *See* CP at 760, 765, 767.

2

regressed back toward its pre-2003 condition, with numerous junk vehicles, bee hives and debris. The City cited Mr. Knapp for these conditions.[2]

The conditions persisted until the City began instituting condemnation proceedings. On September 3, 2013, the City Manager determined the property to be a threat to public health, safety, and welfare. The City notified Mr. Knapp of the proceedings and then set the matter for consideration before the City Council on September 11, 2013. CP at 969, 971. After due consideration, the City Council determined that the property was a blight because it had not been lawfully occupied since 2005, and was a threat to the public health, safety and welfare. Accordingly, the council approved acquisition of the property. CP at 975-977.

The City first unsuccessfully attempted to acquire the property by negotiations. On February 12, 2014, the City Council authorized condemnation proceedings. CP at 986-988. Two months later the City filed the condemnation petition in Walla Walla County Superior Court. On June 16, a hearing was held to determine public use and necessity. The trial court did not take live testimony, but considered submissions from the City and from Mr. Knapp and heard argument from the parties. The trial court found:

> **2.9** The executive authority of the City of Walla Walla properly determined on September 3, 2013 that the dwellings, buildings, other structures, and real property located at 712 Whitman Street in Walla Walla, Washington,

---

[2] In addition to the physical conditions, the property became the site of criminal activity including possession of stolen property and a marijuana grow. CP 446, 449-596.

3

constitute a threat to public health, safety, and welfare based upon its well-documented years of repeated and continuous code violations.

**2.10** A dwelling, building, and other structures exist on the property, and such dwelling, building, and other structures have not been lawfully occupied for a period of one year or more.

**2.10.1** The property has been without water since 2005, and it has been without water ever since. Any occupancy of the property since 2005 unlawfully violated the International Maintenance Code.

**2.10.2** The dwelling on the property was properly declared to be dangerous and unfit for human occupancy in 2005. Any occupancy of the property since 2005 unlawfully violated the Uniform Code for the Abatement of Dangerous Buildings.

**2.11** The dwelling, buildings, other structures, and real property located at 712 Whitman Street in Walla Walla, Washington are a blight on the surrounding neighborhood.

CP at 1058-1059.[3]

Based on these findings, the trial court concluded that condemnation of the property was a public use and its acquisition by the City was a matter of public necessity. CP at 1059. Mr. Knapp then timely appealed to this court.

ANALYSIS

Mr. Knapp contends that the trial court was required to hear testimony and resolve disputed facts at trial, and that the evidence did not support the trial court's ruling. He also

---

[3] Mr. Knapp assigns error to these noted findings and four additional findings not recited here.

seeks attorney fees. We treat the first two contentions as one, and consider these arguments in the noted order, after first reviewing the statutory process governing this action.

The process for condemning "blighted property" is set forth in chapter 35.80A RCW. RCW 35.80A.010 allows condemnation of allegedly blighted property only on proof of any two of the following three "blight" factors:

> (1) If a dwelling, building, or structure exists on the property, the dwelling, building, or structure has not been lawfully occupied for a period of one year or more; (2) the property, dwelling, building, or structure constitutes a threat to the public health, safety, or welfare as determined by the executive authority of the county, city, or town, or the designee of the executive authority; or (3) the property, dwelling, building, or structure is or has been associated with illegal drug activity during the previous twelve months.

The City relied upon the first two factors in this action.

Condemnation must occur "in accordance with the notice requirements and other procedures for condemnation provided in Title 8 RCW." RCW 35.80A.010. Procedurally, the local governing body must first adopt a resolution declaring that the acquisition of the property is necessary to eliminate a neighborhood blight. *Id.* Once a resolution is adopted, condemnation requires three separate judgments from the local county court. RCW 8.12.050; *City of Des Moines v. Hemenway*, 73 Wn.2d 130, 138, 437 P.2d 171 (1968). The first and most relevant here, is a decree of public use and necessity. *Des Moines*, 73 Wn.2d at 138. The second and third determine the amount of compensation and transfer title for the property. *Id.* A decree of public use and necessity may be entered

5

upon proof that "(1) the use is really public, (2) the public interest requires it, and (3) the property appropriated is necessary for that purpose." *In re Condemnation Petition of Seattle Popular Monorail Auth.*, 155 Wn.2d 612, 629, 121 P.3d 1166 (2005). The legislature's declaration that a use is a "public use" is not dispositive although it will be accorded great weight. *Des Moines*, 73 Wn.2d at 138. The concept of "public use" is a fluid one:

> The words "public use" are neither abstractly nor historically capable of complete definition. The words must be applied to the facts of each case in the light of current conditions.

*Miller v. City of Tacoma*, 61 Wn.2d 374, 384, 378 P.2d 464 (1963).

*Procedural Challenges*

With these principles in mind, it is time to turn to Mr. Knapp's arguments. Two of them address the procedure followed in the trial court—consideration of the evidence on paper without hearing testimony and resolution of disputed facts without trial. These arguments also were raised, and rejected, in *City of Blaine v. Feldstein*, 129 Wn. App. 73, 117 P.3d 1169 (2005). In *Blaine*, the city petitioned to condemn a portion of the Feldstein property for use as a boardwalk. The property owner sought an evidentiary hearing, but the trial court rejected the request. *Id.* at 75. On appeal from an order of public use and necessity, appellant initially challenged the decision to deny an evidentiary hearing. Division One of this court upheld the trial court, finding no statutory requirement that testimony be taken at the hearing even while noting that many courts had conducted

6

evidentiary hearings on condemnation motions. *Id.* at 76-77. Instead, the motion procedure to be followed was one left to the discretion of the trial court under CR 7(b). *Id.* at 76. If there are questions of credibility and factual issues requiring testimony, the court should take testimony. *Id.*

Mr. Knapp relies upon the latter observation, contending that he raised factual questions justifying a trial on the merits of the "blight" allegation. *Blaine* also answered this contention. There the property owner took issue with the boardwalk project and requested that testimony be taken, but did put his objections and evidence into the record on paper. *Id.* at 75-77. This court determined that "the facts necessary to resolve the case are not in dispute" and that there were "no credibility issues before the court." *Id.* at 77. The critical facts were whether the boardwalk constituted a public use and whether the Feldstein property was a necessary part of that use. *Id.*

We reach a similar conclusion here. Although Mr. Knapp presented evidence that he was trying to bring the building up to code and that no one was living there, these facts do not present factual conflicts requiring testimony to resolve them. We assume that the trial judge accepted the truth of Mr. Knapp's allegations, but that information did not contradict any of the City's evidence and, thus, did not require the judge to conduct a testimonial hearing.

While the factual circumstances of this case differ enough from *Blaine* that whether a hearing should have been held presented a closer question than in that case, there is an

7

additional significant fact here that was not present in *Blaine*. There the property owner

sought an evidentiary hearing with testimony. *Id.* at 75. Here, there is no evidence that

Mr. Knapp sought testimony. Absent a request for an evidentiary hearing, there is no basis

for finding that the court failed to exercise discretion in denying one.

Accordingly, for all of the noted reasons, we conclude that the trial judge did not

abuse his discretion in considering the extensive[4] record without testimony. There were no

procedural irregularities.

*Sufficiency of the Evidence*

Mr. Knapp also argues that the evidence did not establish "blight" and therefore did

not support the determination of public use and necessity. Properly viewed, the evidence

supported that determination.

We review this claim for substantial evidence. *Id.* at 79. Substantial evidence exists

if the evidence is sufficient to persuade a fair-minded rational person of the truth of the

evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Appellate courts do

not find facts and cannot substitute their view of the facts in the record for those of the trial

judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

Accordingly, the presence of conflicting evidence does not prevent evidence from being

"substantial." *E.g.*, *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

---

[4] The City presented over 1,000 pages of written material. CP at 30-1037.

8

The City relied upon the first two factors found in RCW 35.80A.010: (1) the building had not been lawfully occupied for a period of one year; and (2) the building constituted a threat to the public health, safety, or welfare as determined by the executive authority. It did not rely upon the third factor—use of the property as a drug house—although the City did present evidence that Mr. Knapp had grown marijuana there and had been convicted of using the property to sell marijuana.[5]

As to the first factor, the City presented evidence that the building had been repeatedly tagged as uninhabitable and that lawfully no one could live in the building since it did not have a water supply. In response, Mr. Knapp does not actually challenge the sufficiency of that evidence, but, instead, reconstructs the language of the statute in four syllogisms. He contends that the property was "lawfully unoccupied" because no one was living there and Mr. Knapp still was trying to rehabilitate the building. While we appreciate counsel's use of formal logic and, indeed, encourage all attorneys to make use of logic where appropriate, this argument does not avail Mr. Knapp on this occasion. First, we conclude that counsel's efforts, while creative, present false syllogisms. More critically, the statute does not bear the syllogistical construction counsel placed on it.

In relevant part, the factor is satisfied if the "building . . . has not been lawfully occupied for a period of one year or more." RCW 35.80A.010. This language is clearly

---

[5] Presumably this was because the noted drug offenses occurred more than 12 months before the condemnation action.

9

directed to abandoned buildings that have not been "lawfully" (*i.e.*, no trespassers) occupied for a period of time. Mr. Knapp agreed that the building was unoccupied and that the water had been cut-off since 2005, making the building uninhabitable as a matter of law. The question was whether or not the building was "unoccupied" for the requisite time period, not whether the lack of occupancy was lawful or unlawful. Substantial evidence supported the determination that the building had "not been lawfully occupied" for at least one year.

The second factor is whether the executive authority had determined that the building constituted a threat to the public health, safety, or welfare. Again, the evidence supported that determination. Not only had the City Manager and City Council expressed their own findings along those lines, the City presented plentiful evidence of the city's building codes and Mr. Knapp's building's failure to satisfy the requirements of those codes, rendering the building uninhabitable. In response to this evidence, Mr. Knapp argues that the City's evidence did not address the present circumstances of the building and did not consider his own affidavit that the building was not a threat to the public due to his repairs.

The short answer is that the statute requires lack of occupancy over a substantial period of time, thus making the building's history relevant to the executive's determination that the building currently is a threat to the public interest. The building had, for quite some time, been suffering from a number of substantial defects rendering it unable to

10

shelter humans and Mr. Knapp had never remedied the defects by obtaining the necessary permits and receiving approval from the relevant building code inspectors. The existence of documented long-term problems and the lack of approved, permitted corrections to those problems amply supported the executive authority's determination that the building could not currently be inhabited. The trial court correctly concluded that the evidence supported the executive's ruling.

Substantial evidence supported the determination of public use and necessity. The trial court did not err.

*Attorney Fees*

Finally, Mr. Knapp requests attorney fees under the authority of RCW 8.25.075(1)(a). However, he has not prevailed as required by that section of the statute.

The provision states:

> (1) A superior court having jurisdiction of a proceeding instituted by a condemnor to acquire real property shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees if:
>     (a) There is a final adjudication that the condemnor cannot acquire the real property by condemnation.

When a court rules that the condemnation has failed, the property owner can recover his costs, including attorney fees and expert witness fees. That did not happen in this action since we affirm the ruling of public use and necessity. Accordingly, Mr. Knapp has no basis for recovering attorney fees for this action to this point. Whether he may recover

No. 32604-7-III
*City of Walla Walla v. Terry Knapp*

fees in the future for the valuation and title transfer aspects of this case awaits those

developments.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.